IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

RONNIE D FORTNER, et al.,          )
                                   )
          Plaintiffs,              )
                                   )
v.                                 )          No.:   3:04-CV-363
                                   )                 (VARLAN/SHIRLEY)
TENNESSEE VALLEY AUTHORITY,        )
                                   )
          Defendant.               )


**<u>MEMORANDUM OPINION</u>**

This civil action is before the Court on defendant's Motion for Summary Judgment

[Doc. 6]. Plaintiffs filed this action in Knox County Circuit Court alleging defendant was

negligent in failing to maintain adequate warnings of hidden dangers associated with

defendant's operation of spillway gates. Defendant removed the case to this Court pursuant

to 28 U.S.C. §§ 1441(a)-(b), 1442(a)(1).

Plaintiffs are individuals, residing in Tennessee and elsewhere, and defendant is a

corporate agency and instrumentality of the United States. *See* 16 U.S.C. § 831. Therefore,

jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1337.

In its motion for summary judgment, defendant argues there is no genuine issue of

material fact in dispute and that it is entitled to judgment on the grounds that it is immune

from suit for its alleged tortious conduct in this case pursuant to the Flood Control Act, 33

U.S.C. § 702c, and the discretionary function exception to its waiver of sovereign immunity

pursuant to 16 U.S.C. § 831c(b). [*See* Doc. 9]. Plaintiffs respond by arguing that there are

genuine issues of material fact in dispute as to whether immunity based upon the Flood Control Act or the discretionary function exception apply to the alleged tortious conduct in this case. Specifically, plaintiffs argue that Flood Control Act immunity does not apply because the alleged tortious conduct arose from defendant's hydroelectric and recreation management activities instead of its flood control activities. Discretionary function immunity does not apply, according to plaintiffs, because defendant, having already undertaken a duty to warn the public, was required to ensure those warnings were substantively adequate. [*See* Doc. 13].

For the reasons discussed herein, defendant's motion for summary judgment will be granted, and this case will be dismissed.

## I.      Summary Judgment Standard

Under Fed. R. Civ. P. 56(c), summary judgment is proper if the record, taken as a whole, shows that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be

2

material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *See id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter. *See id.* at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *See id.* at 250.

## II.    Relevant Facts

TVA is a corporate agency and instrumentality of the United States created by and existing pursuant to the TVA Act of 1933. *See* 16 U.S.C. § 831-831(d)(d). Pursuant to the TVA Act, TVA maintains and operates an integrated system of dams on the Tennessee River, including Fort Loudoun Dam, that function to control flooding, generate electricity, facilitate navigation on the river, and provide recreational opportunities. [*See* Docs. 1-3 at 2, 7 at 1-2, 14 at 3].

Between July 14 and July 28, 2003, TVA discharged waters through the spillway gates of Fort Loudoun Dam. [*See* Doc. 8 at 2]. The purpose of this discharge was to maintain flood control capacity in TVA lakes upstream from Fort Loudoun Dam. [*Id*.]. At that time, TVA did not have, and was not subject to, any mandatory policy or procedure requiring safety warnings to protect boaters in the tailwaters below the dam. [Doc. 7 at 3]. As a result,

dam managers were free to exercise their own judgment about what measures to take for the safety of boaters in the tailwaters. [*See id.*].

In exercising that judgment, TVA managers had erected and maintained large billboard-sized signs on each bank approximately 1600 feet below the dam that read "Warning Dangerous Waters," which were visible to boaters in the water. [*Id.* at 2]. TVA also maintained a third such sign approximately 300 feet below the dam that was also visible to boaters in the water. [*Id.*]. In addition, the Tennessee River Navigation Charts published by the U.S. Army Corps of Engineers indicated that the area at the base of the dam and extending approximately 1500 feet downstream was a "Danger Area." [*Id.*].

On or about July 16, 2003, Ronnie D. Fortner, Zenith R. Price and Gene Z. Boy launched a boat from a TVA boat ramp located approximately 3600 feet downstream from the dam so that they could fish in the dam's tailwaters. [*See* Docs. 1-3, 7]. Messrs. Fortner, Price and Boy cast their lines into the general area of turbulence created by the discharge of water from the dam's operating turbines. [Doc. 1-3 at 3]. At the same time, they allowed the boat to float downstream, but as they attempted to re-position the boat to continue casting into the turbulence upstream, the boat was pulled toward the dam and an open, operational spillway. [*Id.*].

The fishermen made unsuccessful efforts to move the boat away from the spillway, and the boat became entrapped by the subsurface currents created by the spillway. [*Id.*]. Messrs. Price and Boy jumped from the boat and attempted to swim to safety, but were pulled under the water by the current. [*Id.* at 3-4]. Messrs. Price and Boy both drowned. [*Id.*

4

at 4].  Plaintiff Fortner stayed in the boat until it capsized, at which time he nearly drowned before reaching safety. [*Id.*].

Plaintiffs allege that TVA's negligence in failing to adequately warn boaters of the hidden dangers that are present in the tailwaters during TVA's operation of the spillway gates was the proximate case of the deaths of Messrs. Price and Boy and injuries to plaintiff Fortner. [*Id*. at 5].  Defendant argues that plaintiffs' claims are barred by operation of the immunity provision of the Flood Control Act, 33 U.S.C. § 702(c), and the discretionary functions exception to its waiver of sovereign immunity, 16 U.S.C. § 831c(b). [Doc. 9].

## III.  Analysis

### A.  Flood Control Act Immunity

The Flood Control Act contains an immunity provision that states, "No liability of any kind shall attach or rest upon the United States for any damage from or by floods or flood waters at any place."  33 U.S.C. § 702c.  This immunity provision applies to defendant as a "wholly-owned corporate agency and instrumentality of the United States" when it is engaged in flood control activities. *Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1333 (6th Cir. 1995).  *See also Sligh v. Tenn. Valley Auth.*, 532 F. Supp. 168, 170-71 (E.D. Tenn. 1980), *aff'd*, 698 F.2d 1223 (6th Cir. 1982) (applying 33 U.S.C. § 702c to TVA flood control activities).  Application of the immunity is determined "by the character of the waters that cause the relevant damage and the purposes behind their release." *Cent. Green Co. v. United States*, 531 U.S. 425, 434 (2001).

5

Immunity extends to those activities related to the "'management' of a flood control activity," including whether and how to warn of the dangers of the flood control activity. *United States v. James*, 478 U.S. 597, 610 (1986). Where the alleged damage is the result of power production activities, however, defendant does not retain Flood Control Act immunity. *See Brewer v. Sheco Constr. Co.*, 327 F. Supp. 1017, 1019 (W.D. Ky. 1971) (citing *Grant v. Tenn. Valley Auth.*, 49 F. Supp. 564 (E.D. Tenn. 1942)). Similarly, defendant may not retain Flood Control Act immunity where the alleged damage results from defendant's role as a manager of recreational facilities. *See Denham v United States*, 646 F. Supp. 1021, 1026 (W.D. Tex. 1986) (concluding Flood Control Act immunity does not apply to park managed for dual purpose of flood control and recreation).

There is no dispute that defendant's purpose in operating the spillway gates at the time of the events giving rise to this case was to "maintain flood control capacity in TVA lakes upstream." [Doc. 8 at 2]. Thus, defendant's operation of the spillway gates at the time in question was flood control activity. Plaintiffs' complaint, however, is not focused on the operation of the spillway gates specifically, but instead is focused on the adequacy of the warnings associated with that activity. [*See* Doc. 1-3 at 5]. This distinction, however, does not alter the analysis because plaintiffs complain of the adequacy of the warnings associated with a flood control activity. There is no genuine dispute of material fact that Flood Control Act immunity extends to such activities. *See James*, 478 U.S. at 610.

In an attempt to escape this result, however, plaintiffs argue that there is a genuine dispute of material fact as to whether the adequacy of the warnings related to defendant's role

6

as a power producer or recreation manager. [*See* Doc. 13 at 10, 13]. The relevant conduct for purposes of determining the application of Flood Control Act immunity, however, is the conduct that is the proximate cause of plaintiffs' damage. See 33 U.S.C. § 702c. In this case, plaintiffs allege that defendant's operation of the spillway gates and the inadequacy of warnings associated with that activity. [*See* Doc. 1-3 at 5].

Because there is no dispute that defendant's purpose in engaging in the complained of activity was flood control, defendant cannot be held liable for damages resulting from the management of that activity, which includes the adequacy of warnings associated with the operation of the spillway gates. *See Cent. Green Co.*, 531 U.S. at 434; *James*, 478 U.S. at 610.

B.    Discretionary Function Exception to Waiver of Sovereign Immunity

TVA is a "wholly-owned corporate agency and instrumentality of the United States . . . ." *Hill*, 65 F.3d at 1333. In the Sixth Circuit, however, TVA does not enjoy sovereign immunity because Congress "provided expressly that the TVA may be sued." *Queen v. Tenn. Valley Auth.*, 689 F.2d 80, 85 (6th Cir. 1982); *see* 16 U.S.C. § 831c(b). But "[w]hen TVA is engaged in a governmental function that is discretionary in nature, where the United States itself would not be liable, TVA cannot be subject to liability." *Hill v. Tenn. Valley Auth.*, 842 F. Supp. 1413, 1420 (N.D. Ala. 1993). *See also Sligh*, 532 F. Supp. at 170-71.

The Supreme Court developed a two-part test for application of this discretionary function exception. *See United States v. Gaubert*, 499 U.S. 315 (1991).

7

The first part of the test requires a determination of whether the challenged act or omission violated a mandatory regulation or policy that allowed no judgment or choice. . . . If so, the discretionary function exception does not apply because there was no element of judgment or choice in the complained of conduct. . . . The requirement of judgment or choice is not satisfied if a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow, because the employee had no rightful option but to adhere to the directive . . . .

If the challenged conduct is determined to be discretionary, the second part of the *Gaubert* test looks to see whether the conduct is of the kind that the discretionary function exception was designed to shield . . . . In enacting FTCA Section 2680(a), Congress wished to prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy . . . . Thus, where there is room for policy judgment and decision, there is discretion of the sort protected by Section 2680(a). . . .

*Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997) (citations and internal and external quotations omitted).

With respect to the second part of the *Gaubert* test, the Sixth Circuit has stated, "This [c]ourt in *Rosebush* outlined the following three types of decisions that are generally shielded from tort liability by the discretionary function exception: (1) 'the proper response to hazards,' (2) 'whether and how to make federal lands safe for visitors,' and (3) 'whether to warn of potential dangers.'" *Edwards v. Tenn. Valley Auth.*, 255 F.3d 318, 322-23 (6th Cir. 2001) (quoting *Rosebush*, 119 F.3d at 441).

In determining whether defendant's conduct involved judgment or choice, the Court must first "determine exactly what conduct is at issue." *Rosebush*, 119 F.3d at 441. In *Rosebush*, a case involving the Forest Service's alleged failure to warn campers of the dangers associated with the use of fire pits, "the relevant inquiry [was] whether the controlling statutes, regulations and administrative policies mandated that the Forest Service

8

maintain its campsites and fire pits in any *specific* manner." *Id*. (emphasis in original). The Sixth Circuit observed that there were no mandatory regulations requiring the Forest Service to warn campers of fire pit dangers or to classify fire pits as "high priority hazards." *Id*. Based on this conclusion, the Sixth Circuit applied the discretionary function exception.

In the present case, plaintiffs complain of TVA's conduct in failing to adequately warn of the hidden dangers in the tailwaters during TVA's operation of the spillway gates. Thus, the relevant inquiry is whether there is a genuine dispute of material fact as to whether there was any statute, regulation, or administrative policy mandating that TVA post warnings in any specific manner around the dam. More specifically, because plaintiffs' complaint goes to the substantive adequacy, rather than physical adequacy, of the warning, the inquiry is whether there is any statute, regulation, or administrative policy required TVA to post any specific warning to alert boaters to any dangers associated with operation of the spillway gates.

The only evidence before the Court is that at the time of the incident giving rise to this case, defendant did not have, and was not subject to, any mandatory policy or procedure requiring any specific warnings to protect boaters below the dam. [Doc. 7 at 3]. Therefore, the Court must conclude that there is no disputed issue of material fact as to whether any statute, regulation, or administrative policy mandated a specific warning to alert boaters to any dangers associated with the operation of the spillway gates. Thus, defendant's actions at issue in this case involved judgment or choice for purposes of applying the discretionary function exception. *See Rosebush*, 119 F.3d at 441.

9

In applying the second part of the *Gaubert* test, the Court must consider whether there is a genuine dispute of material fact as to whether defendant's conduct in posting its warnings as it did is conduct the discretionary function exception was intended to shield. To do so, the Court is guided by the three types of conduct discussed in *Edwards*. *See* 255 F.3d at 322-23. Defendant argues that its conduct constituted its response to a hazard as well as its decision whether to warn. [*See* Doc. 15 at 3-4]. Plaintiffs, however, contend that they do not complain of defendant's decision whether to warn. Instead, they complain of defendant's execution of that decision. [*See* Doc. 14 at 15].

Again, the only evidence before the Court is that at the time of the incident TVA managers had to exercise judgment in deciding what specific measures defendant takes for the safety of members of the public boating in the area below the dam. [*See* Doc. 7 at 3]. This exercise of judgment required the balancing of considerations, including the effectiveness of various types of warnings, financial considerations and aesthetic concerns. [*Id.*]. In other words, TVA managers had to exercise judgment in deciding how to respond to the danger posed to boaters by the operation of the spillway gates. In exercising that judgment, managers balanced various considerations before deciding to respond to a potential hazard by erecting the signs stating "WARNING DANGEROUS WATERS." Thus, defendant's conduct in posting its warnings as it did is conduct the discretionary function exception was intended to shield. *See Rosebush*, 119 F.3d at 441; *Edwards*, 255 F.3d at 322-23.

10

Therefore, applying *Gaubert*, there is no genuine dispute of material fact that defendant's conduct did not violate some mandatory policy and that it was the kind of activity the discretionary function exception was intended to shield. *See Rosebush*, 119 F.3d at 441.

## IV.    Conclusion

Considering the record as a whole and viewing the evidence in the light most favorable to plaintiffs, there is no genuine dispute as to an issue of material fact that defendant's operation of the spillway gates and the adequacy of the warnings associated with that activity are covered by the immunity provisions of the Flood Control Act, 33 U.S.C. § 702c, and the discretionary functions exception to defendant's waiver of sovereign immunity, 16 U.S.C. § 831c(b).  Therefore, defendant is entitled to judgment as a matter of law.  For this reason, the Court will grant defendant's motion for summary judgment [Doc. 6], and this case will be dismissed.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE